IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ADRIAN MILLS,

    Petitioner,

v.                                                                        CASE NO. 1:11-cv-20-MP-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 8, Petitioner's *pro se* Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereafter "Petition"). The Petition stems from Petitioner's Alachua County convictions of aggravated assault with a firearm and possession of a firearm by a convicted felon, for which Petitioner is serving a total 25-year sentence. Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed replies and supplemental exhibits. Docs. 25, 30, 31, 33. Upon due consideration of the Petition, the Response, the Replies, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

The relevant portions of the record may be summarized as follows. Petitioner was charged with three counts of aggravated assault with a firearm and one count of possession of a firearm by a convicted felon. The State filed a notice that it would seek

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

an enhanced sentence as a violent career criminal. App. Exh. A (dkt. entry 6/20/05). Prior to trial, Petitioner rejected a plea offer from the State for a total ten-year sentence on all charges. Exh. C at 392-3; Exh. I at 15, 22-23. On the record, Petitioner's trial counsel stated that Petitioner had rejected a plea offer and informed counsel that he wished to go to trial, and that counsel had visited Petitioner the weekend before trial and discussed with him that the State was seeking enhanced penalties. Exh. C. at 392-93.

The aggravated assault charges were bifurcated for jury trial, and Petitioner was convicted of one count (Count I). Following the jury's verdict, he pleaded no contest to the felon-in-possession charge (Count IV). Exh. C at 274, 277. At sentencing, the parties and the Court discussed that following his previous incarceration Petitioner had signed a notice acknowledging he could be subject to sentencing as a prison releasee reoffender for a subsequent offense, including aggravated assault. As a prison releasee reoffender, Petitioner faced up to 15 years in prison for the aggravated assault conviction. Further, as a habitual felony offender Petitioner faced a sentence of up to 30 years (twice the 15-year maximum) for the aggravated assault conviction. The habitual offender notice was filed after the trial in accordance with State law. Exh. C. at 416-62 (sentencing hearing). The trial court determined that based upon Petitioner's sentencing scoresheet his aggravated assault conviction qualified him for a ten-year habitual-offender sentence and a consecutive fifteen-year sentence for the felon-in-possession conviction. The fifteen-year firearm sentence was not subject to any sentencing enhancements. Exh. C at 460-61. Petitioner's convictions and sentences were affirmed *per curiam* without opinion. App. Exh. G; *Mills v. State*, 937 So.2d 127

(Fla. 1st DCA 2006).

Petitioner filed a postconviction motion pursuant to Fla. R. Crim. P. 3.850, asserting, *inter alia*, a claim that his trial counsel rendered ineffective assistance by failing to advise him that if he rejected the State's plea offer and was convicted at trial he faced sentencing as a habitual offender. The state court ordered an evidentiary hearing on this claim and one additional claim that is not at issue in this case, and appointed postconviction counsel for Petitioner. The state court summarily denied Petitioner's remaining claims. Exh. H at 26. Following the evidentiary hearing, the state court denied the remainder of Petitioner's motion. *Id*. at 214. The First DCA affirmed *per curiam* without written opinion. *Mills v. State*, 25 So.3d 1227 (Fla. 1st DCA 2010). Petitioner also unsuccessfully pursued sentencing relief pursuant to Fla. R. Crim. P. 3.800(a). Exh. P.

Petitioner then filed the instant habeas corpus petition, which Respondent concedes is timely and exhausted. As the sole claim for federal habeas relief, Petitioner contends that his trial counsel was ineffective for not correctly advising him that he could be sentenced as a habitual offender for the aggravated assault offense before he turned down the 10-year plea offer. Petitioner contends that had he been correctly advised he would have accepted the plea offer. Exh. 8.

## **Section 2254 Standard of Review for Ineffective Assistance Claims**

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, ___ U.S. ___, 2013 WL 5904117, *4 (2013)(quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

In *Missouri v. Frye*, 566 U.S. ___, 132 S.Ct. 1399 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S.Ct. 1376 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. *Frye*, 566 U.S. ___, 132 S.Ct. at 1404–08; *Lafler*, 566 U.S. at ___, 132 S.Ct. at 1384. Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during plea negotiations. *Lafler*, 566 U.S. at ——, 132 S.Ct. at 1384 (internal quotation marks omitted). The Court also considered how to apply the prejudice prong of the ineffective-assistance-of-counsel test set forth in *Strickland* and concluded that, in order to show prejudice, a defendant must demonstrate a reasonable probability that: (1) he

would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. *Frye*, 566 U.S. at ___, 132 S.Ct. at 1409; *Lafler*, 566 U.S. at ___, 132 S.Ct. at 1384–85.

## Discussion

Petitioner's instant claim, alleging that trial counsel was ineffective for not correctly advising him that he could be sentenced as a habitual offender for the aggravated assault offense, and that Petitioner otherwise would have accepted a ten-year plea offer, was asserted as Ground E in his Rule 3.850 postconviction motion. *See* R. Exh. Exh. H at 225.

At the evidentiary hearing on the Rule 3.850 motion, Petitioner testified that he was aware that the State had filed a notice of intent to seek career criminal sentencing enhancements prior to discussing potential sentences with his trial counsel. He testified that he nevertheless believed he faced a maximum 15-year sentence for all charges (with concurrent sentences) if he went to trial, and that he concluded he "might as well go ahead and go to trial" rather than accept a plea offer with a total ten-year sentence. R. Exh. I at 12, 15.

Petitioner's trial counsel testified telephonically at the hearing. She recalled that Petitioner was adamant about wanting a jury trial because he felt he had a good factual case, despite her conversations with him about the possibility of enhanced sentencing as a violent career criminal, which created greater sentencing exposure than a habitual felony offender sentence. R. Exh. I at 23. The evidentiary hearing was continued

because she did not have Petitioner's case file. At the continuation of the hearing, she testified that her notes reflected she was aware of Petitioner's sentencing exposure as a habitual felony offender and prison releasee reoffender (in addition to the career criminal enhancement noticed by the State), and "obviously, I would have discussed that with Mr. Mills," although she did not recall exact conversations with him. R. Exh. J. at 10. Her notes also reflected that she "[a]dvised Defendant again of all penalties possible upon conviction," and she agreed that would have included advising him of the possibility of habitual offender sentencing. She testified that her practice in every case was to advise clients regarding maximum sentencing exposure, and she had no reason to believe she did not do so in Petitioner's case, given the serious nature of the charges. *Id*. at 10-11.

In rejecting this claim on postconviction review, the state court summarized the testimony adduced at the evidentiary hearing and held as follows:

> Defendant testified that, as he considered a 10-year plea offer, his attorney advised him that he did not meet the criteria for violent career criminal sentencing, and that she did not mention any other possible enhancements. He testified that the State had filed its notice of intent to seek enhanced penalties at the time of their conversation.
>
> At that hearing, Defendant's trial attorney, Jenny Devine, testified telephonically from Seattle that she discussed the possibility of violent career criminal and [prison releasee reoffender] sentencing with the Defendant. . . . With the benefit of her personal notes and records, she testified that she recalled advising Defendant that the prosecutor might seek habitual felony offender sentencing if he went to trial. She testified that, in cases where the State filed notices of intent to seek enhanced penalties, she always – and did in this case – advised clients fully on the consequences of such enhanced penalty. She also testified that Defendant was adamant about going to trial.
>
> Based on the foregoing, the Court finds that Defendant's counsel fully and correctly advised him regarding impeachment with his criminal

>history and regarding all enhanced penalty possibilities which had been noticed by the State.

Exh. H at 214-16.

The state court rejected Petitioner's claim on the performance prong of *Strickland* without addressing the prejudice prong, as is permissible under the governing standard. *Strickland*, 466 U.S. at 686 (court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong). The state court's rejection of the claim was premised on crediting counsel's testimony at the evidentiary hearing that she informed Petitioner of the potential for enhanced sentencing over Petitioner's testimony that she did not. "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)). Questions about the credibility of a witness is a question of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court." *Id.* It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence. *Burt v. Titlow, ___ U.S. ___,* 2013 WL 5904117, *4.

Petitioner points to his own testimony at the evidentiary hearing as evidence in support of his claim. *See* Doc. 31. This evidence is plainly insufficient to rebut the state court's factual determination that counsel's contrary testimony should be credited over Petitioner's. On this record, and in view of the deference afforded to the state

court's rejection of this ineffective-assistance claim on the merits, Petitioner has failed to show that he is entitled to federal habeas corpus relief.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) should be **DENIED** and that a certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 3rd day of December 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.